Gordon v. Moore.

## GORDON v. MOORE.

1. ACCORD AND SATISFACTION: *Payment of part.*
   An agreement by a creditor to accept a smaller sum in satisfaction of a debt, carried into execution by receipt of the money and execution of a formal and positive instrument of release, with all other acts essential to an absolute relinquishment of his right, is a valid and irrevocable act.

2. SAME: *Part payment by third party.*
   An agreement by a creditor to accept from a third person, in behalf of the debtor, money or a security for a smaller sum in satisfaction of the whole, is valid and binding and will discharge the debt.

3. SURETIES: *Release of part: Effect on others.*
   A release of a surety is no release of the principal; but a release of one of two sureties is a release of the other from one-half of the debt.

APPEAL from *Phillips* Circuit Court.

Hon. M. T. SANDERS, Circuit Judge. · ·

*Tappan & Hornor* for appellant.

The note being a joint one, whatever in law satisfied it as to one of the parties satisfied it as to all. The liability of the makers was not changed by judgment; a satisfaction of the judgment as to one released the others. A release of one of several obligors is a release of all. (*4 Ark., 510; 6 Eng., 513; 16 Ark., 351; 1 Hill, 185; 3 Den., 238; 17 Mass., 580; Story on Prom. Notes, sec. 425; 1 Parsons on Notes and Bills, 249; 23 Pick., 434.*) Though the release had no seal, it was based upon a consideration, which was paid. (*2 Dan. Neg. Inst., sec. 1290.*) In this State seals are abolished. The release was an executed agreement; all was done that was necessary, and it discharged all. *4 Col., 543; 3 Cold. (Tenn.), 395; 33 Pa. St., 268; 30 Ala.,*

*444; 7 Ind., 597; 4 Gilman (Ill.), 536; 11 B. Mon., 74; 51 Barb., 570.*

*Stephenson & Trieber* for, appellee.

The release of a judgment debtor, upon payment to him in money of part of the judgment debt, does not operate as a satisfaction of the whole judgment. A promise by a creditor to receive a part of his debt in full satisfaction of the whole is *nudum pactum* and void. (*Pinnell's Case, 5 Coke, 117.*) This is the rule in England and America, except in Pennsylvania. The cases in *2 Ark., 209; 33 Ib., 572; 40 Ib., 180,* are exceptions, as where the debt is not due or unliquidated, etc., but where the debt is ascertained by judgment, an agreement to accept less in full satisfaction is void for want of consideration. (*27 Cal., 611; 1 Smith Lead. Cas., 147; 17 Cent. Law J., 302.*) But Gordon and Childress were *co-sureties*, and the release expressly provides for Childress' release only, and appellant is not released thereby. *Brandt on Sur. and Guar., sec. 383.*

EAKIN, J. On the twenty-fourth day of May, 1883, Moore recovered, by default, a judgment against Gordon for $2,293.20, being for the balance, with interest, due upon a certain promissory note executed to Moore by Robinson, Childress and Gordon on the twelfth day of January, 1881, and due at twelve months.

On the seventh of April following, Gordon filed this petition in the Circuit Court under section 4692 of Gantt's Digest, setting forth, as amended, that Moore had sued Robinson and Childress upon the same note in the District Court for the Northern District of Mississippi at Oxford, and at the December term thereof, in 1882, had recovered a judgment against them for the same balance, which appears then to have been $2,202.90. He alleges that, in

March, 1883, this judgment was discharged and satisfied upon the payment by Childress to Moore of the sum of $450, which operated as a discharge of the claim as to petitioner also ; that, in consideration of said payment, Moore had executed to Childress a release, as follows :

"STATE OF ARKANSAS, ⎱
　*County of Phillips.* ⎰

"Know all men by these presents, that I, John P. Moore, of the county and State aforesaid, in consideration of the sum of four hundred and fifty dollars paid to me by D. C. Childress of Coahoma County, Mississippi, I have this day released said Childress from any and all liability to me upon a certain judgment rendered in my favor against said Childress, by the United States Court for the Northern District of Mississippi, at Oxford, in said State, at the December term thereof, 1882, and hereby authorize the clerk of said court to enter satisfaction as to said Childress upon said judgment, in accordance herewith.

"Witness my hand and seal this nineteenth of March, 1883.

"JOHN P. MOORE."

This instrument was filed with the clerk of the said District Court, who made the following indorsement upon the margin of the recorded judgment :

" This judgment is satisfied as to D. L. Childress, and is here so entered by authority of plaintiff on file, March 23, 1883.

"G. R. HILL, Clerk."

The petitioner states that Moore well knew all these facts when the judgment by default was obtained, but that they had not come to his own knowledge until after the adjournment of the term. He therefore prayed that the judgment rendered against him in the Phillips Circuit

Court be vacated, and that he be allowed a new trial, with other appropriate relief.

Moore, in response, admitted the recovery of the Mississippi judgment against Robinson and Childress, and the payment to him by Childress of the sum of $450, which should have been entered as a credit upon the balance, but which had been inadvertently omitted. He consents that the judgment in the Phillips court against petitioner may be to that extent modified. For the rest he says that Robinson was the principal in the note, and that Childress and Gordon were only his sureties, and denies that the release executed to Childress was intended, or did operate to discharge his *claim* against the principal, Robinson, or the other surety, Gordon. He says that petitioner was insolvent, and that he sued the principal with Childress in Mississippi, hoping to make his money there, but soon learned that Childress was insolvent also. The most that could be got out of him was the sum of $450, and that only by an agreement to release him from the judgment. He submits that petitioner was not released by the transaction.

Upon hearing by the court, the suretyship of Childress and Gordon was shown. Childress testified, in explanation of the release, that he then owned a half interest in the Brown and Childress place in Mississippi, which he desired to mortgage for a loan of money, and was obliged, in order to get a perfect abstract of title, either to pay off the judgment debt of Moore, or to have it released as to himself. He never saw Moore about the matter, but transacted the business through others. A Mr. Carter made the trade with Moore, and a Mr. Brown paid Moore the money, and witness settled with Brown for it afterwards.

The Honorable Circuit Judge, confessing some doubt, expressed the opinion that, notwithstanding some slight

differences, the facts of this case come within the principles announced by this court in the cases of *Cavaness v. Ross*, *33 Ark.*, and that of *Coblentz*, *40 Ark.*, *p. 180;* and upon the authority of those cases he held that the agreement for a release, and the release itself, was *nudum pactum*, not operating as a release of the whole judgment nor as a release of Gordon.

A judgment was thereupon rendered modifying the former judgment by allowing a credit of $450, the amount paid by Childress. The motion for a new trial was over-ruled. A bill of exceptions was properly taken, and Gordon appeals.

The general principle announced in *Cavaness v. Ross* is well settled, being this, that the payment of a less sum of money will not be good in satisfaction of a larger sum actually liquidated and clearly due and payable, unless there be in the transaction some other element of consideration of real or supposed benefit to the creditor or detriment to the debtor. The question arose upon a compromise, made *pendente lite*, by which the plaintiff accepted a less sum and dismissed the suit. Held, no discharge as to the balance.

The case of *Coblentz v. Wheeler & Wilson Man. Co.*, *40 Ark.*, *180*, comes somewhat nearer this. It was a case of injunction by Coblentz to restrain the sewing machine company from enforcing a judgment which it had obtained against him, upon the grounds that he had agreed with the agent of the company to pay, upon a certain day, a sum less than the amount of the judgment, and had attended at the end of the time appointed prepared to make the payment, but that the agent had not attended to receive it, and had afterwards caused an execution to be issued. The court held that the agreement was an accord unexecuted, without consideration, invalid, and not en-

forceable in equity. The decree below, dismissing the suit, was affirmed.

In the Cavaness case nothing was done but the payment of the money by the debtor. No release was given. The original notes were retained and afterwards assigned, as valid, to one ignorant of the compromise. The dismissal of the suit does not imply abandonment of the claim.

In the Coblentz case there was only a parol agreement for a future release of a judgment never carried into execution. No money was ever paid.

This cause is distinctive from either. There was not only payment of the sum agreed, and the actual execution of a release, but there was a power of attorney given the clerk to enter upon the margin of the record a full satisfaction of the judgment as to Childress. The authority was filed amongst the archives of the office, and the power was executed as directed. There was nothing further to be given up. Everything had been done, of the most solemn and positive nature between the parties and by the clerk, to carry out the intention and to give notice to the world of what had been done. There was an object which made it necessary that nothing should be left executory. That was, that the land of Childress might be no longer incumbered by the lien of the judgment, but left free for a contemplated mortgage. There is no reason why such a transaction should not be considered as valid and as irrevocable as a gift executed by delivery.

Certainly there must be some mode by which one may dispose of that which is his own, as his generosity or his sound views of his best interests may prompt. It is often very desirable that he should have that privilege. It is done in business every day. Collections cannot always be made promptly by law. The best men are prone to amicable adjustments, and the exigencies of business often require

Gordon v. Moore.

it. It would be hard and unreasonable if a creditor, pressed for money, might not say to an embarrassed or reluctant debtor, "pay me a part and I will release the balance." He is cut off from doing that, in many cases, by the rule as it now stands, but the rule is a hard one, based upon purely technical reasoning. It is hedged in with numerous exceptions.

Further, there is in this case a positive element of benefit to the creditor, which may form a good consideration. The money was not paid to Moore by Childress, but was paid by Brown, a third person and friend of Childress. There are numerous cases holding that the rule in discussion does not apply where a negotiable note or security of a third person is taken for a less amount. The exception applies *a fortiori* to the payment of the money in cash by the third person, since it is better for the creditor than any note or security. The consideration is that the creditor gets, or is assured of getting what, perhaps, the debtor might never pay. And it cannot alter the nature of the case that the debtor repaid the advance.

We conclude, therefore, that an agreement by a creditor to accept a smaller sum in satisfaction of a debt, carried into execution by receipt of the money, and the execution of a formal and positive instrument of release, with all other acts essential to an absolute relinquishment of his right, is a valid and irrevocable act.

1. ACCORD AND SATISFACTION.
Payment of part of debt.

And also, that an agreement to accept from a third person, in behalf of the debtor, money or a security for a smaller sum in satisfaction of the whole is valid and binding, and will discharge the debt.

2. SAME:
Part payment by third party

We think, for these reasons, that his honor the circuit judge erred in holding the agreement in this case to be *nudum pactum*.

Gordon v. Moore.

The release to Chilldress being valid, it remains for us to consider its effect as to other parties.

3. SURE-TIES:
Release of part, effect on others.

It was intended, as shown by its terms and by the circumstances, to release Childress alone, from the joint judgment recovered against him and Robinson. This is as clear as if all the rights of Moore, on the judgment, against the principal had been expressly reserved. Was it competent in Moore to do that? Or did the release, however intended, have the effect of satisfying the judgment against Robinson also?

In the former case, confining its immediate operation to Childress alone, it took away from Gordon his right to contribution against Childress, and must inure to release Gordon to the extent of his right to contribution, but no further. It must give him at once what he might get by contribution if he had paid the debt, and Childress had not been released. In the latter case, that is, if the effect were to release Robinson also, it would deprive Gordon of his right against Robinson to entire exoneration, and would release him wholly. This would ensue, not from the direct legal effect of the release of the Mississippi judgment by which Gordon was not bound, but from the equitable principles which regulate the dealings and adjust the rights of creditors, principals and sureties.

It is pressed by appellant that the release of one joint debtor releases all. That is the common law rule as to debts which were *technically* joint, as well as to those which were joint and several.

The evidence in this case discloses, however, that Robinson was the principal, and that Childress and Gordon were sureties. It did not alter the relations of the parties, that a joint judgment had been rendered against the principal and one of the sureties. As to Moore all were principals from the beginning, inasmuch as he had the right to

collect the debt of all or either. He was only required to take cognizance of their relation to the extent of avoiding any act which would prejudice the rights of the sureties to obtain exoneration from the principal, or contribution amongst themselves.

But the surety is under no obligation to the principal, and the discharge or release of the surety does not affect the principal in any manner. It is simply doing for the principal what he ought to do himself. (*Brandt on Sur. & Guar., sec. 129.*) Robinson was not discharged by the release of Childress, and remains liable to exonerate Gordon.

*Release of surety no discharge of principal.*

It remains to consider the effect of the release of Childress upon the rights of his co-surety Gordon.

Sureties *inter sese* are joint obligors; all secondarily liable together. Their mutual rights and obligations were first determined in the courts of chancery and enforceable there alone. It is still the more appropriate forum, from its more flexible means of adjustment; but courts of law have long assumed a concurrent cognizance of these rights and will enforce them as defenses. The practice is well settled in England (*W. & T. Lead. Cas. in Eq., vol. 11., p. 1894*), and has obtained in this State for forty years or more. *State Bank v. Watkins, 6 Ark., 127; Wilson v. Tebbetts, 29 Ark., on p. 587.*

The right of a surety compelled to pay a debt as against his co-surety is not exoneration of the burden. It is his as much as his fellow's. It is the right of contribution, the right to recover from his co-surety just so much as will make both equal in the loss. It is obvious that by the discharge of one surety the others are injured (or would be) just to the extent of their right of contribution. The equitable rule adopted in such cases is not uniform in England and all the States.

In England it is settled *at law*, or seems to be, that a release or discharge of one surety operates as a discharge of the others, but in equity a mere composition with one surety would not. *Ex parte Gifford, 6 Ves., 805.*

It is also held that a release of a surety may be made with a reservation of remedies against the others, made in such a manner as to be construed into a covenant not to sue.

In America it would seem that almost every phase of the question has been adopted by different States, and at different times by courts of the same State. Sometimes it has been held that a discharge of one surety releases all. It was so expressly held in *Tourns v. Riddle, 2 Alabama*, and in *Stockton v. Stockton, 40 Ind., 225.* The first of these is a case where a surety was released by having given notice to the creditor to sue, which he neglected, and the principal became insolvent. It was held that the release of the one giving notice was the release of the other also. Upon that point this court has held directly *per contra.* In another case in Indiana it was held that the release of the property of one surety in a joint judgment against several, had no effect whatever upon the other sureties who might be held liable for the whole debt. *Starry v. Johnson, 32 Ind., 438.*

There are, however, quite a number of cases by Mr. Brandt, which sustain the proposition which he lays down as follows: "If there are several sureties liable for the same debt, and the creditor releases one of them from liability, but does not thereby materially alter the contract, he generally releases the remaining sureties to the extent that such released surety would otherwise have been liable to contribute to his co-sureties." (*Brandt on Sur., etc., sec. 383.*) Upon this principle, in connection with another well settled rule in equity that where some

of the sureties are insolvent the others must contribute to make up the loss, was decided the case of *Dodd v. Winn, 27 Mo., 501.*) There there were five sureties. Judgment was obtained against one, execution levied on property enough to pay the debt, and returned by order of the creditor unsatisfied. Afterwards he sued another of the sureties. It was held that if all were solvent he could only recover four-fifths, inasmuch as the defendant surety ought himself to bear the burden of one-fifth, and had still unimpaired his right against three others for contribution to a like amount. It was held at the same time that if the other sureties were shown to be insolvent, he would be held liable for only half, inasmuch as that would be the extent of his equitable burden, and the creditor must lose the other half as to which the right of contribution had been cut off by his release of the property taken in execution.

This mode of adjustment injures no one. Its plain, com- *Release of one of two sureties.* mon sense equity commends itself to every man's sense of right, and is harmonious with the well settled rule, that the release of the principal discharges the surety altogether, because it takes away the right to exoneration. When the relief goes beyond the injury it becomes technical and arbitrary. We think, in this case, it would have been proper to have rendered judgment for only half the unpaid balance of the debt with interest, leaving out of the estimate of that balance the $450 paid by Childress. With that payment Gordon had nothing to do. It was the consideration of the release to Childress, and was paid in behalf of Childress personally.

For error in holding the release of Childress *nudum pactum*, and in rendering judgment against appellant for the whole balance, less the amount paid by Childress, a new trial should have been allowed.

Reverse the judgment and remand the cause with directions for a new trial and further proceedings in accordance with law and this opinion to be had either at law, or, if desirable, on motion, upon the equity side.